UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV01561 AGF |
| ) | |
| JOHN P. ARTHUR, also known as, ) | |
| JOHN P. ARTHUR, JR., and ) | |
| TANDY C. THOMPSON, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Tandy Thompson's Motion to Dismiss or for a More Definite Statement [Doc. No. 10]. The United States brings this action to reduce to judgment federal tax assessments made against Defendant John P. Arthur, to foreclose federal tax liens on the real property described in the complaint as "Parcels A, B, C, and D," and to set aside allegedly fraudulent conveyances of Parcels B and C made by Arthur to himself and Thompson. Acting pursuant to 26 U.S.C.§ 7403(b), the United States has named Thompson as a Defendant to allow her to assert any interest she claims in the subject real estate prior to a court-ordered sale of the properties.

The complaint alleges that from 1989 through 2001, Arthur acquired interests in Parcel A, which is located in Saint Louis County, Missouri, and in Parcels B, C and D, which are located in Pike County, Missouri.[1] Arthur allegedly has delinquent tax

---

[1] In its prayer for relief [Doc. No. 1, p.7], the United States mistakenly refers to parcels of land in "Saint Louis County, Minnesota" and "Pike County, Minnesota," although all other references in the complaint, including plat descriptions and addresses, correctly identify the location of the subject parcels as Missouri. These mistaken

liabilities for tax years 1994 through 1998 and 2001 through 2005.[2]  The earliest assessment for these liabilities arose on September 9, 2000.  On May 1, 2009 and July 14, 2009, the United States filed notices of federal tax liens tied to these assessments with the Saint Louis County, Missouri, Recorder of Deeds and the Pike County, Missouri, Recorder of Deeds, respectively.[3]

Thompson acquired an interest in Parcel A in November 1989 and in Parcels B, C, and D in June 2001.  The United States alleges that purported transfers of Parcels B and C from Arthur to Thompson were made without adequate and fair consideration, allowed Arthur to retain control of Parcels B and C, and rendered him insolvent, and that the purported conveyances were made with the intent to defraud Arthur's creditors and are of no effect.  The United States asserts that each of the assessments remains unpaid and forms the basis for a valid federal tax lien that it seeks to enforce.

In her motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), Thompson asserts that United States' allegations fail to state a claim.  In the alternative, she asserts that the allegations should be clarified in an amended complaint

---

references have not been raised by the Defendants, as a source of confusion much less prejudice.  Therefore, the Court will allow the United States to amend the complaint to correct its clerical error.

[2]   The complaint generally references tax years 1994 through 1998 and 2001 through 2005.  However, in ¶¶ 28 and 29 of the complaint, the United States alleges the filing of federal tax liens for "tax years 1993 through 1998 and 2001 through 2006."  The United States is directed to amend its complaint to clarify this matter.

[3]   In ¶ 29 of the complaint, the United States alleges the filing of federal tax liens with the recorder of deeds for "St. Pike County, Missouri."  The United States is directed to amend its complaint to correct this error.

2

pursuant to Federal Rule of Civil Procedure 12(e).  Specifically, Thompson contends that the United States has miscalculated the amounts allegedly owed by Arthur under Count I of the complaint.  Thompson also asserts, in the alternative, that Count II lacks a statutory or other legal basis, and that United States has not adequately pled the elements of a fraudulent conveyance claim under either the Missouri Uniform Fraudulent Transfer Act ("UFTA"), Mo. Rev. Stat. §§ 428.005-135 (2000) or the Federal Debt Collection Procedure Act ("FDCPA"), 28 U.S.C. §§ 3304-3308 (2006).  Thompson further contends that the claims for fraudulent conveyance under the UFTA or FDCPA are time-barred.  Finally, she argues that the United States cannot claim a lien interest in Parcel A and that the United States' asserted lien interests in Parcels B, C, and D are limited to the tax assessments levied in September 2000 for tax years 1994 through 1998.

**Legal Standards: Motions to Dismiss and for a More Definite Statement**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint so as to eliminate claims "which are fatally flawed in their legal premises . . . thereby sparing litigants the burden of unnecessary pretrial and trial activity."  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  To survive a motion to dismiss for failure to state a claim, a complaint need not contain "detailed factual allegations," but it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  As the United States Supreme Court reiterated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009),

3

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.

Upon considering a motion to dismiss, a federal court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Fed. R. Civ. P. 12(b)(6); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Davenport v. Farmers Ins. Grp.,* 378 F.3d 839, 842 (2004). The task of a court is then "to review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (noting "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible").

Rule 12(e), Fed. R. Civ. P., provides that a party may move for a more definite statement in response to a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A pleading that meets Rule 8(a)'s notice pleading standard and puts the other party on notice of the claim does not provide a basis for requesting a more definite statement." *Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 977 (E.D. Mo. 2010) (citation omitted).

**Discussion**

Thompson first contends that the amounts alleged as owed under the disputed tax assessments in Count I are improperly calculated and that the amount should be limited to $230,537.24, rather than $305,136.66. The United States responds that the amounts set

4

forth in the complaint are correct, and that Thompson has failed to take into account the accrued interest and penalties on the delinquent tax assessments.

At the outset, one must question Thompson's challenges to Count I as that claim is directed only at Arthur. In any event, however, the objection fails because the calculation of damages is ultimately a fact specific determination and not one which is properly resolved by way of a motion to dismiss. *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981) (stating that a motion to dismiss does not test facts).

In its response to the motion to dismiss, the United States proposes to amend Count I to set forth the methodology used to determine the delinquent tax liability. While the Court is denying Thompson's motion to dismiss Count I, in the interest of clarity, the Court will grant, in part, the motion for a more definite statement, requiring the United States to amend its complaint as set forth in its response to Defendant's motion to dismiss [Doc. No. 19 at 3].

Thompson next asserts that the United States fails to denominate the legal theory or theories that form the basis of Count II, and that if the United States intends to plead a claim for fraudulent conveyance, it has not adequately pled the elements of such a claim under the Missouri UFTA or the FDCPA.

The Court finds, however, that the United States has identified a valid legal basis for Count II. The United States identifies 26 U.S.C. §§ 7402-7403 as a statutory and jurisdictional basis for this count. Section 7403(a) of the Internal Revenue Code permits the United States to seek the judicial sale of property on which the United States has a tax lien in order to satisfy delinquent tax liability. 26 U.S.C. § 7403(a); *United States v.*

*Rodgers*, 461 U.S. 677, 681 (1983). The United States is required to name as parties to the action all persons claiming an interest in the subject property. 26 U.S.C. § 7403(b). The Code further provides that after the Court has resolved all claims to the property, including questions of fraudulent conveyance, it may order a sale of the property and distribute the proceeds according to the respective interests. 26 U.S.C. § 7403(c).

When pursuing claims for fraudulent conveyance, the United States may proceed under either the Missouri UFTA or the FDCPA. *United States v. Upton*, 967 F. Supp. 57, 58 (D. Conn. 1997) (holding that the United States is authorized to proceed with fraudulent conveyance claims under state or federal law).

Here, Count II properly states a claim for the fraudulent conveyance of Parcels B and C. The essential elements of a fraudulent conveyance are: "(1) a conveyance or assignment (2) of . . . [an] interest in land (3) with the intent to hinder, delay, or defraud creditors." *Howard v. Whiteside*, 4:10CV00013 CAS, 2010 WL 1463018 at *5 (E.D. Mo. April 13, 2010); *Fisher v. Brancato*, 147 S.W.3d 794, 799 (Mo. Ct. App 2004 ) (citing *Behr v. Bird Way, Inc.*, 923 S.W.2d 470, 473 (Mo. Ct. App. 1996)). In addition to these elements under the Missouri UFTA, there are eleven factors,[4] or "badges of

---

[4] Those factors are: (1) the transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential

fraud" to be given consideration in determining the presence of "the intent to hinder, delay or defraud" a creditor.  *See* Mo. Rev. Stat. § 428.024.2(1)-(11).

The United States here alleges facts which satisfy several of these indicia of intent. Specifically, the United States alleges that the purported transfers of Parcels B and C from Arthur to Thompson were made without adequate and fair consideration, allowed Arthur to retain control of Parcels B and C, and rendered Arthur insolvent.  Complaint at ¶¶ 9-11, 13-20, & 21-27.  The United States further alleges that Arthur's purported transfers of Parcels B and C to Thompson were fraudulent as to the United States because Arthur conveyed them to Thompson in order to hinder or defraud his creditors. *Id.* at ¶¶ 21-27.  As such, the Court concludes that the United States has properly alleged alternate statutory bases for recovery in Count II, and that the allegations of fraudulent conveyance provide sufficient specificity "to raise a right to relief above the speculative level." *Twombly* at 555.

Thompson next asserts that even if Count II states a claim under the Missouri UFTA or the FDCPA for fraudulent conveyance, it is barred by the applicable statute of limitations.[5]  Thompson is correct that the statute of limitations under the Missouri UFTA expired prior to the filing of the United States' complaint.  But the United States is not

---

assets of the business to a lienor who transferred the assets to an insider of the debtor. *See* Mo. Rev. Stat. § 428.024.2(1)-(11).

[5] Pursuant to the Missouri UFTA an action for fraudulent conveyance is extinguished on the later of four years from the date of the purported transfer or one year after the transfer could reasonably have been discovered by the claimant.  Mo. Rev. Stat. §428.049(1).  The transfers at issue here occurred in 1989 and 2001.

bound by a state statute of limitations when collecting delinquent tax liabilities.  *See United  States v. Summerlin*, 310 U.S. 414, 416 (1940) (holding that the United States is not bound by state statutes of limitation when enforcing delinquent tax liabilities); *Karras v. Karras,* 16 F.3d 245, 246-247 (8th Cir. 1994) (holding United States fraudulent conveyance claim was not bound by state statutes of limitation) (citing *United States v. Wurdeman*, 663 F.2d 50, 51 (8th Cir. 1981)); *United States v. Jones,* 631 F. Supp. 57, 59 (W.D. Mo. 1986) (finding that the running of the statute of limitations period under Missouri law did not preclude the United States' fraudulent conveyance claim).

  Nor is the United States bound by the general six year statute of limitations of  the FDCPA.  28 U.S.C. § 3306(b).  The FDCPA's statute of limitations provides that where  "another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter."  28 U.S.C. § 3001(b).  Inasmuch as "another Federal law," the Internal Revenue Code, is the vehicle for the United States' collection of delinquent tax liability, the applicable statute of limitations is the ten year statute of limitations found in the Internal Revenue Code, 26 U.S.C. § 6502(a)(1).  This statute of limitations requires the United States to commence an action for the collection of delinquent tax "within 10 years after the assessment of the tax. . . ." *Id.; United States v. Bantau,* 907 F. Supp. 988, 990 (N. D. Tex. 1995).  As the earliest of the tax assessments relevant to this action issued on September 9, 2000, and this suit was filed on August 23, 2010, the claims asserted by the United States are timely.

8

Finally, Thompson asserts that the complaint fails to state a claim against her with respect to Parcel A, as she acquired her interest before any assessments were levied, and that it fails to state a claim regarding Parcels B, C, and D with respect to the assessments for tax years 2004 and 2008, as her interest was acquired before these assessments.

Section 6321 of the Internal Revenue Code imposes a lien upon all property and rights to property belonging to a liable taxpayer. 26 U.S.C. §6321 (2006). The lien arises upon the assessment of a tax delinquency, is perfected with notice to the taxpayer, and persists until the taxpayer's liability is satisfied or becomes unenforceable. 26 U.S.C. §§ 6321-23 (2006); *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719 (1985). Thus the liens attach to all property rights held by Arthur. The allegations that Arthur had an interest in Parcels A, B, C, and D are sufficient to state a claim against Arthur for tax years 2004 through 2008. *See* U.S.C. § 7403(a) (authorizing a civil action against a delinquent taxpayer to enforce a lien on any property in which he has "any right, title or interest."

Thompson's argument that her interest in Parcel A is superior to those of the United States because she acquired her interest prior to any of the assessments, and that her interests in Parcels B, C, and D are superior to that of the United States because she acquired her interests prior to the assessments for tax years 2004 through 2008 fail for several reasons. First, the questions of when and how Thompson acquired her interest in parcels A, B, C, and D, are fact intensive, and are properly resolved at trial or on a motion for summary judgment, and not on a motion to dismiss. *See Peck*, 660 F.2d at 374. Further, the question of when Thompson acquired an interest in Parcels B, C, and D may

9

well be immaterial to the question of whether the United States may enforce its lien against the properties. *Aquilinov v. United States*, 363 U.S. 509, 513-515 (1960) (attachment of federal lien depends on whether taxpayer may claim "rights to property" under state law; priority of federal lien depends on federal law).  The lien arises as a result of Arthur's delinquent tax liability, not Thompson's interest.  26 U.S.C. § 6321 (2006).  In addition, Thompson's reliance on 26 U. S. C. § 6323(a) is misplaced.  That section provides that the tax "lien imposed under § 6321 shall not be valid as against any purchaser. . . until notice . . . has been filed by the Secretary [of the Treasury]." 26 U. S. C. § 6323(a) (2006).  The United States has alleged that "[a] delegate of the Secretary of the Treasury gave timely notice of each assessment . . . to John P. Arthur and made demand for payment. . . ."  Complaint ¶ 10.  The time of Thompson's acquisition of her interests in the properties does not affect the predicates for the attachment of the lien, nor its possible invalidation under 26 U.S.C. § 6323(a).

More importantly, Thompson appears to misapprehend the nature of the claim asserted against her.  Thompson is named as a defendant for the express purpose of establishing any interest she may have in the property.  26 U.S.C. § 7403(b) specifically provides:  "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto."  *See Nat'l Bank of Commerce*, 472 U.S. at 720 (1985); *United States v. Rodgers*, 461 U.S. 677, 681 (1983).  If a taxpayer transfers property prior to the time a tax lien arises, the United States may set aside the transfer if it is fraudulent under the law of the state where the property is located.  *United States v. Kaplan*, 277 F.2d 405, 408 (5th Cir. 1960); *Jones,* 631 F. Supp. at 59.  This is exactly

10

what the United States seeks to do here. And if Thompson proves to have an interest superior to that of the United States, she may be entitled to a portion of any sale proceeds. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Thompson's Motion to Dismiss Counts I and II, or in the alternative, for a More Definite Statement [Doc. No. 10 ] is **GRANTED IN PART and DENIED IN PART**, as follows:

Within seven (7) days from the date of this Order, the United States shall amend its Complaint as directed herein in footnotes 1-3, and to clarify the methodology used to determine the amounts claimed. In all other respects, Defendant's motion is denied.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 19th day of September, 2011.